578 So.2d 272 (1991)
Lavern MILAM
v.
STATE of Mississippi.
No. 89-KP-1365.
Supreme Court of Mississippi.
April 10, 1991.
Lavern Milam, pro se.
Mike C. Moore, Atty. Gen., Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and McRAE, JJ.
ROBERTSON, Justice, for the Court:

I.
We are asked today to construe statutes regarding an incarcerated offender's eligibility for parole. The claim requires particularly that we focus upon the Mississippi Department of Corrections' statutorily authorized "good time" program and a claim of access to its benefits by one under consecutive sentences, one of which by statute is a mandatory sentence.
The Circuit Court denied the offender's claim that he had earned good time while serving his mandatory sentence. We affirm.

II.
Lavern Milam was taken into custody on February 5, 1980. On February 20, 1981, Milam appeared in the Circuit Court of DeSoto County and entered guilty pleas to separate charges of armed robbery and manslaughter. On the armed robbery *273 charge, the Circuit Court sentenced Milam to ten years imprisonment. See Miss. Code Ann. § 97-3-79 (Supp. 1990). On the manslaughter charge, the Court sentenced Milam to fifteen years imprisonment. Miss. Code Ann. § 97-3-25 (1972). Of consequence, the Court ordered that Milam serve his sentences consecutively. See Miss. Code Ann. § 99-19-21 (1972).
On September 5, 1989, Milam  still in custody  filed the present action in the Circuit Court of Sunflower County, Mississippi. He charges the Department of Corrections has advised him that his initial parole eligibility date is April 6, 1993. Milam says this computation is in error as it does not allow him credit for "good time" he has earned or accrued over the years he has been incarcerated. He presents a claim cognizable under our post-conviction relief act. Miss. Code Ann. § 99-39-5(1)(d) and (g) (Supp. 1990). His suit asks for a declaratory judgment. Rule 57, Miss.R.Civ.P.[1]
On September 5, 1989, the Circuit Court considered Milam's complaint on its face and dismissed it with prejudice. The Court found that, taking as true the allegations of the complaint, Milam was entitled to no relief. Milam now appeals to this Court.

III.
This case presents a pure question of law. Insofar as the record appears, there are no facts disputed or disputable. The question, rather, regards interpretation and correlated reading of the relevant statutes. In such a posture, no evidentiary hearing is required, and the Circuit Court may and should act summarily. Miss. Code Ann. § 99-39-11(2) (Supp. 1990); Brooks v. State, 573 So.2d 1350, 1352 (Miss. 1990); Jordan v. State, 577 So.2d 368, 369 (Miss. 1990); Garlotte v. State, 530 So.2d 693, 694 (Miss. 1988).

IV.
"What is and what is not a criminal's expiating punishment" is a creation of law, Segarra v. State, 430 So.2d 408, 410 (Miss. 1983), and, in this state, that law is primarily statutory in form. And so of his date with freedom. We begin with the general rule: a prisoner becomes eligible for parole once he has served "one-fourth (1/4) of the total of such term or terms for which such prisoner was sentenced, ..." Miss. Code Ann. § 47-7-3(1) (Supp. 1990). On one of his sentences, Milam is subject to an exception to the general rule. Persons convicted of armed robbery are ineligible for parole until they have served at least the first ten years of any sentence imposed therefor. Miss. Code Ann. § 47-7-3(1)(d).
When we apply these statutes to Milam's sentences, we find him burdened, first, by *274 a ten-year armed robbery sentence with respect to which he has had no parole eligibility. See Mitchell v. State, 561 So.2d 1037, 1039 (Miss. 1990). Nothing in the good time program rendered him eligible for release a day before that ten-year sentence had been served. Cooper v. State, 439 So.2d 1277, 1278 (Miss. 1983).
Consecutive thereto, Milam has been ordered to serve the fifteen-year manslaughter sentence and, in that instance, he is eligible for parole at the completion of one-fourth that term, subject to the good time rules noted below. It goes without saying that, when a person is by express order providing therefor sentenced to serve consecutive terms, imprisonment on the second, or each subsequent conviction, shall commence at the completion of the service of the term for the preceding conviction. Miss. Code Ann. § 99-19-21 (1972). His parole eligibility is a function of the law's response to those consecutive sentences. Davis v. State, 429 So.2d 262, 263 (Miss. 1983).
As a matter of good correctional practice, this state has authorized an earned time program (colloquially "good time") wherein offenders may earn reductions in their sentences. Miss. Code Ann. §§ 47-5-138 through -142 (Supp. 1990). Without going into the details, Milam claims he has been denied substantial credits earned under this program. His claim runs up against a legal brick wall, first, in the form of Miss. Code Ann. § 47-5-139(7) (Supp. 1990), which reads:
No inmate in any event shall have his sentence terminated by administrative good time action until he is eligible for parole... .
See Coleman v. State, 483 So.2d 680, 681 (Miss. 1986). Miss. Code Ann. § 47-7-3(2) (Supp. 1990), fleshes out the point and provides:
Notwithstanding any other provision of law, an inmate shall not be eligible to receive earned time, good time or any other administrative reduction of time which shall reduce the time necessary to be served for parole eligibility ... [as otherwise provided by law]... . Moreover, meritorious earned time allowances may be used to reduce the time necessary to be served for parole eligibility ... [as otherwise provided]
Plainly put, Section 47-7-3(2) says nothing shall reduce the ten years Milam was sentenced to serve for armed robbery. His ten-year armed robbery sentence was and is mandatory.
Milam's manslaughter sentence is a different matter. There, he becomes eligible for parole after he has served one-fourth his time. Again, Section 47-7-3(2) provides that the good time program may not operate to effect Milam's release on parole short of his serving one-fourth of that sentence, except in the limited case of meritorious earned time. See Miss. Code Ann. § 47-5-142 (Supp. 1990).
Taking as true the facts Milam presents in the record, he began the service of his ten-year armed robbery sentence on February 5, 1980, the date of his initial arrest. Miss. Code Ann. § 99-19-23 (1972). He was legally released from that sentence on February 5, 1990, but remains held under the fifteen-year manslaughter sentence. Milam ordinarily should serve at least one-fourth of that sentence  three years and nine months  before he is eligible for parole. He appears, however, to have earned (or be in the process of earning) substantial meritorious earned time. This advances his earliest parole eligibility date by some seven months and allows him to set his sights on March 30, 1993, a date the State accepts in its brief before us.

V.
The Circuit Court correctly dismissed Milam's complaint, denying his application that his earliest parole eligibility date be advanced before March 30, 1993.
AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, PITTMAN, BANKS and McRAE, JJ., concur.
NOTES
[1] Post-conviction proceedings by definition have their genesis in the processes of our criminal law. They are quasi-criminal in law and in fact, and for many purposes we treat them as such. See e.g., Miss. Code Ann. § 99-39-23(1) (Supp. 1990) (authorizing appointment of counsel). Mississippi Rules of Civil Procedure afford a regimen of limited applicability and governance of post-conviction proceedings such as this, that is, the Rules supplement the Mississippi Uniform Post-Conviction Collateral Relief Act, Miss. Code Ann. §§ 99-39-1, et seq. (Supp. 1990) and are available except where the act provides otherwise. See, e.g., Neal v. State, 525 So.2d 1279, 1280-81 (Miss. 1987) (PCR Act's pleadings requirements supplement those in Miss.R.Civ. P.); Billiot v. State, 515 So.2d 1234, 1236-37 (Miss. 1987) (same). The PCR Act contains specific expressions of this view, e.g., Miss. Code Ann. § 99-39-15 (Supp. 1990) (authorizing discovery pursuant to Miss.R.Civ.P., subject to "good cause shown"); Miss. Code Ann. § 99-39-19 (Supp. 1990) (authorizing summary judgment procedure found in Rule 56, Miss.R. Civ.P.). More generally, this view is a function of Rule 81(a)(1), Miss.R.Civ.P., which declares the Rules' supplemental applicability to "proceedings pertaining to the writ of habeas corpus." The PCR Act is the law's contemporary expression of habeas corpus. See, Rule 22, Miss.S.Ct. Rules; and particularly McClendon v. State, 539 So.2d 1375, 1377, fn. 2 (Miss. 1989). See also, Miss. Code Ann. § 99-39-3 (Supp. 1990); State v. Read, 544 So.2d 810, 813 (Miss. 1989); Reynolds v. State, 521 So.2d 914, 915 (Miss. 1988); Bobkoskie v. State, 495 So.2d 497, 499 (Miss. 1986); Evans v. State, 485 So.2d 276, 280 (Miss. 1986); but see, Walker v. State, 555 So.2d 738, 740-41 (Miss. 1990). We construe Rule 81(a)(1) to include it, with familiar effect. See e.g., In Interest of T.L.C., 566 So.2d 691, 698, fn. 8 (Miss. 1990); Pearson v. Parsons, 541 So.2d 447, 450 (Miss. 1989); Matter of Launius, 507 So.2d 27, 29 (Miss. 1987); Moore v. Moore, 451 So.2d 226, 227 (Miss. 1984); and, see generally, H & W Transfer & Cartage Service v. Griffin, 511 So.2d 895, 900-01 (Miss. 1987); First Mississippi National Bank v. KLH Industries, Inc., 457 So.2d 1333, 1336-38 (Miss. 1984).