KING, JUSTICE, DISSENTING:
 

 ¶ 25. The sole issue in this case is whether Richard Jordan is entitled to an evidentiary hearing on his petition for post-conviction relief. This Court need not and should not reach the merits of his petition, because he is entitled to an evidentiary hearing in the trial court. Accordingly, I respectfully dissent.
 

 ¶ 26. As the majority acknowledges, the parties disagree about whether a 500-milligram dose of midazolam is an "appropriate anaesthetic or sedative" that will render Jordan "unconscious, so that the execution process should not entail a substantial risk of severe pain" pursuant to state statute.
 
 Miss. Code Ann. § 99-19-51
 
 (1) (Supp. 2018); Maj. Op. ¶ 15. Jordan presents two affidavits from Dr. Craig Stevens to support his argument that midazolam is incapable of rendering an inmate unconscious and insensate to pain. The State presents Dr. Richard Antognini's affidavit, in which he opines that 500 milligrams of midazolam will render an inmate "completely unconscious and insensate to pain."
 

 ¶ 27. When a petitioner and the State produce contradictory affidavits in post-conviction proceedings, an evidentiary hearing should be ordered when the contested facts are material and the affidavit produced by the petitioner is not a "sham."
 
 Wright v. State
 
 ,
 
 577 So.2d 387
 
 , 390 (Miss. 1991) ("In order for a contested fact to require an evidentiary hearing it must be material. Moreover, where an affidavit is overwhelmingly belied by unimpeachable documentary evidence in the record such as, for example, a transcript or written statements of the affiant to the contrary to the extent that the court can conclude that the affidavit is a sham no hearing is required.");
 

 see also
 

 Neal v. State
 
 ,
 
 525 So.2d 1279
 
 , 1281 n.2 (Miss. 1987) ("Post-conviction actions employ many of the procedural trappings of a civil action.... As in civil actions, we do not resolve genuine issues of material fact by a process of trial by affidavit.").
 
 [2]
 

 ¶ 28. Jordan frames the issue as a "simple matter of enforcing the statutory command." He clarifies that the instant petition does not raise an Eighth Amendment method-of-execution challenge, but that it is grounded solely in state law.
 

 ¶ 29. The majority of cases that discuss midazolam address constitutional arguments.
 
 See
 

 Glossip v. Gross
 
 , --- U.S. ----,
 
 135 S.Ct. 2726
 
 , 2739-40,
 
 192 L.Ed.2d 761
 
 (2015). Here, the majority argues that
 
 Glossip
 
 is instructive to the state-law claim at issue. The Court in
 
 Glossip
 
 , however, was not presented with a state-law based claim; instead, it considered whether midazolam violates the Eighth Amendment. The petitioners in
 
 Glossip
 
 were on death row in Oklahoma.
 

 Id.
 

 at 2735
 
 . In contrast to section 99-19-51's requirement that the State of Mississippi use "an appropriate anesthetic or sedative[,]" Oklahoma's statute does not contain a specific directive. Oklahoma's statute provides, "The punishment of death shall be carried out by the administration of a lethal quantity of a drug or drugs until death is pronounced by a licensed physician according to accepted standards of medical practice." Okla. Stat. Ann. § 1014. Additionally,
 
 Glossip
 
 was not dispositive regarding midazolam; the district court found that the plaintiffs were not entitled to a preliminary injunction because their claims did not have a substantial likelihood of success; the Supreme Court affirmed this decision, but did not rule that the plaintiffs also should lose the substantive case.
 
 Glossip
 
 , 135 S.Ct. at 2736, 2746. And, importantly, the Supreme Court was reviewing a more developed record including testimony and documents, not simply affidavits.
 
 [3]
 

 Id.
 
 at 2735. It did not itself weight the expert opinions, as the majority inappropriately does; rather, it found that the trial court was not clearly erroneous in its conclusion regarding midazolam after the trial court held a three-day evidentiary hearing.
 
 Id.
 
 at 2739. Thus,
 
 Glossip
 
 is not dispositive regarding whether an evidentiary hearing is warranted on a state-law claim. Indeed, a thorough evidentiary hearing did occur in
 
 Glossip
 
 , providing the Supreme Court with an adequate record and allowing the district court to decide evidentiary matters and
 matters of credibility. The majority even goes so far as to chastise Dr. Stevens for failing to cite "probative support" for his conclusion that he was unable to determine the ceiling effect for midazolam. Maj. Op. ¶¶ 20-21. However, the majority denies Jordan the very evidentiary hearing in which he would have the opportunity to present "probative support." Moreover, in
 
 Glossip
 
 , the Supreme Court specifically held that the lack of research on non-therapeutic doses of midazolam applies equally to both parties' cases, noting that "because a 500-milligram dose is never administered for a therapeutic purpose, extrapolation was reasonable."
 
 Glossip
 
 , 135 S.Ct. at 2741.
 

 ¶ 30. Jordan provides a Montana case which addresses a similar deviation-from-state-law challenge, and distinguishes such a claim from a constitutional challenge.
 
 Smith v. Montana
 
 , No. BDV-2008-303,
 
 2015 WL 5827252
 
 (Oct. 6, 2015). There, the petitioners challenged whether pentobarbital-the drug selected by the Montana Department of Corrections to perform lethal injections-meets the legislative directive that the drug be an "ultra-fast acting barbiturate."
 

 Id.
 

 at *2 ;
 
 see also
 

 Mont. Code Ann. § 46-19-103
 
 (3). The Montana court went to great lengths to distinguish this state-law challenge from an Eighth Amendment claim:
 

 [I]t is important to clarify the nature of this case. This Court has not been asked and will not make a determination as to whether lethal injection of the Plaintiffs constitutes cruel and unusual punishment. This case is not about the constitutionality or appropriateness of the death penalty in Montana. This case is not about whether the use of pentobarbital in a lethal injection setting is cruel and unusual or if pentobarbital in the doses contemplated by the State of Montana would produce a painless death.... This case is only about whether the drug selected by the Department of Corrections to effectuate the Plaintiffs' lethal injections, pentobarbitol, meets the legislatively required classification of being an "ultra-fast acting barbiturate."
 

 Id.
 

 at **1-2
 
 . After a hearing, the court found that pentobarbital did not meet Montana's statutory requirements and enjoined the state from using the drug in its lethal injection protocol.
 

 Id.
 

 at **1-2
 
 .
 

 ¶ 31. Taking Jordan's claim as a state-law challenge-that is, whether midazolam conforms with Section 99-19-51's requirement that the State use "an appropriate anesthetic or sedative" which "is likely to render the [Jordan] unconscious, so that the execution process should not entail a substantial risk of severe pain"-he has presented sufficient support to warrant an evidentiary hearing. Jordan and the State have produced competing affidavits on a material issue. And, although the State presents a
 
 Daubert
 
 -style defense
 
 [4]
 
 to Dr. Stevens's affidavit, his affidavit is not a "sham."
 
 Wright
 
 ,
 
 577 So.2d at 390
 
 ("[W]here an affidavit is overwhelmingly belied by unimpeachable documentary evidence in the record such as, for example, a transcript or written statements of the affiant to the contrary to the extent that the court can conclude that the affidavit is a sham no hearing is required.").
 

 ¶ 32. At this point, the relevant inquiry before the Court is whether Jordan is entitled to a hearing.
 
 Cf.
 

 Thorson v. State
 
 ,
 
 76 So.3d 667
 
 , 676 n.14 (Miss. 2011) ("the evidence sufficient to warrant the granting of an evidentiary hearing ... in no way
 permeates the trial judge's testing and weighing of the evidence");
 
 see also
 

 Rowland v. Britt
 
 ,
 
 867 So.2d 260
 
 , 262 (Miss. Ct. App. 2003) ("The purpose of an evidentiary hearing is for the court to receive evidence in order to make findings of fact.").
 

 ¶ 33. Jordan, through Dr. Stevens's affidavits, has established a
 
 prima facie
 
 claim. The affidavits are not a "sham," nor does the majority find them to be a sham. As such, an evidentiary hearing is warranted, especially when considering the heightened standard of review we apply to death penalty cases.
 
 [5]
 

 See
 

 Harveston v. State
 
 ,
 
 597 So.2d 641
 
 , 643 (Miss. 1992) (petition meeting basic pleading requirements is sufficient to mandate an evidentiary hearing unless it appears beyond doubt that petitioner can prove no set of facts which would entitle him to relief). I would therefore grant Jordan's petition and remand the case to the trial court for an evidentiary hearing.
 

 KITCHENS, P.J., JOINS THIS OPINION.
 

 In
 
 Neal
 
 , Justice Robertson explained in his separate opinion that the State should respond to a petitioner's affidavit in PCR proceedings by showing that an evidentiary hearing is not warranted, not by presenting a contradictory affidavit:
 

 The State appears to be of the view that its function in responding to a post-conviction application is to present counter affidavits which contradict and overcome petitioner's affidavits. But this is not the case at all, for we do not engage in trial by affidavits here any more than any other proceeding. The State would be better advised to direct its responses to the idea that an evidentiary hearing is not required, that is, to the proposition that either the petitioner's showing is not in proper form or that the facts he alleges are supported by affidavits suggesting no reasonable possibility that at an evidentiary hearing [the petitioner] may be able to establish a claim for relief from his sentence or conviction. The counter affidavit process is at the very earliest one in which the State should engage in connection with a motion for summary judgment.
 
 Miss. Code Ann. § 99-39-19
 
 (2) (Supp. 1986).
 

 Neal
 
 ,
 
 525 So.2d at 1287
 
 (Robertson, J., concurring in part, dissenting in part).
 

 "[A]fter discovery, the District Court held a 3-day evidentiary hearing on the preliminary injunction motion. The District Court heard testimony from 17 witnesses and reviewed numerous exhibits."
 
 Id.
 
 at 2735.
 

 In fact, in
 
 Glossip
 
 , the petitioners challenged the state's expert, who was a doctor of pharmacy, claiming that inconsistencies in his testimony existed.
 
 Glossip
 
 , 135 S.Ct. at 2743-45 The district court denied the
 
 Daubert
 
 challenge, and the Supreme Court upheld that decision.
 
 Id.
 

 Because execution is final, it "weighs in favor of hearing plaintiffs' claims."
 
 McGehee v. Hutchinson
 
 , No. 4:17-cv-00179 KGB,
 
 2017 WL 1381663
 
 , at *1 (E.D. Ark. April 15, 2017). A review of the caselaw indicates that courts generally hold evidentiary hearings regarding midazolam claims.