liGAUDIN, Judge.
Appellants Gayle P. Neidhardt and Donald J. Vale were each convicted by a jury in the 24th Judicial District Court of possession with intent to distribute heroin, in violation of LSA-R.S. 40:966. Both were sentenced to life imprisonment without benefit of parole, probation or suspension of sentence and both were ordered to pay fines.
Vale’s sentence is to run concurrent with sentences imposed in federal court and in the 24th Judicial District Court.
The denial of parole is not authorized by LSA-R.S. 40:966(B); consequently, this prohibition must be stricken from the sentences. In all other respects, we affirm the convictions and sentences of each appellant.
A third person, Michael Bergeron, was indicted by the Jefferson Parish Grand Jury along with Neidhardt and Vale. The charge against Bergeron was dismissed by the District Attorney’s office on January 28, 1991. Neidhardt and Vale were tried in January, 1993. Bergeron testified for the state in return for the dismissal of the charge against him.
Bergeron admitted that he had a drug habit. In order to support his |2habit, he said, he sold heroin obtained from Neidhardt and Vale. At the time of his arrest, Berger-on was selling about 25 single dosage units a week for $25.00 each.
On June 18, 1990, Bergeron drove to a Time Saver, where he met Neidhardt and Vale. While Neidhardt and Vale were in an automobile transferring heroin to Bergeron for $4,200.00, Jefferson Parish police officers arrested all three.
While some police officers were obtaining a search warrant for Neidhardt’s residence, other officers drove Neidhardt and Vale to Neidhardt’s house. Once inside, the officers secured (examined) two sofas in the living room for safety purposes before seating Neidhardt and Vale. Under a cushion, an officer found six individual dose foil packets of heroin. When the warrants arrived, the officers conducted a full search of the household and found other drug paraphernalia.
Neither Neidhardt nor Vale has alleged on appeal that trial evidence was insufficient. Instead, each has assigned errors of a legal nature. Both appellants assigned these errors:
(1) the trial judge erred when he denied motions to quash because the trial was not timely;
(2) the six foil-wrapped doses of heroin were improperly allowed in evidence;
*381 (3) the trial judge erred by permitting “other crimes” evidence;
(4) the trial judge erred when he sustained the state’s objection to cross-examination of Bergeron regarding his arrest for carrying a concealed weapon; and
(5) it was error to deny parole.
[gin her other assignments of error, Neid-hardt says that it was wrong for the trial judge to prevent defense counsel from inquiring about Bergeron’s current address.
One of Vale’s other assignment of error also concerns Bergeron. Vale argues that the trial judge erred when he allowed Ber-geron to testify about heroin delivered two weeks prior to the June 18, 1990 arrest. Vale, in a separate brief, assigned as error the trial judge’s refusal to grant a motion for a severance.
We shall first consider the five synonymous assignments of error.
ASSIGNMENT NO. 1
In this assignment of error, Neidhardt and Vale cite and rely on LSA-C.Cr.P. art. 578(2), which states, in pertinent part, that in felony, non-capital cases, no trial shall be commenced after two years from the date of institution of the prosecution. Appellants were indicted on August 2,1990; trial was on January 11-15, 1993. On October 26, 1992, Vale filed a motion to quash alleging that the two-year time limitations for starting the trial had expired. The motion was heard on November 30,1992. On that date, Neidhardt joined in the motion to quash. The trial judge denied the motions on December 1, 1992, finding that motions for continuance filed by the defendants had suspended the running of the prescriptive period.
In State v. Jones, 620.So.2d 341 (La.App. 5 Cir.1993), the court said this at pages 342 and 343:
“LSA-C.Cr.P. art. 578 establishes a two year prescriptive period from institution of prosecution to commencement of trial in non-capital felony cases. LSA-C.Cr.P. art. 580 provides for suspension of that pres-' criptive period when a defendant files a motion to quash or another preliminary plea. The period is suspended until, the ruling of the court, but in no case shall the state have less than one year after the ruling to | commence trial. State v. Watkins, 594 So.2d 501 (La.App. 5 Cir.1992), writ denied, 600 So.2d 654 (La.1992).
“A motion for a continuance filed by a defendant is a preliminary plea under LSA-C.Cr.P. art. 580 which suspends the running of the prescriptive period. State v. Fabacher, 362 So.2d 555 (La.1978); State v. Cranmer, 306 So.2d 698 (La.1975). Joint motions to continue likewise suspend the period of limitation. State v. Simpson, 506 So.2d 837 (La.App. 1 Cir.1987), writ denied, 512 So.2d 433 (La.1987).”
Neidhardt suggests that the decision in State v. Jones was not correctly decided. In the alternative, she alleges that even if this court concludes that State v. Jones, was correctly decided, the instant case is distinguishable.
Prosecution was instituted against Neid-hardt on August 2, 1990, by the filing of a grand jury indictment. At the September 6, 1990 arraignment, trial was set timely on November 26, 1990, but was continued many times, often on oral motions by defense counsel. In addition to numerous oral motions, Vale’s attorney filed two written motions for continuance, one on March 5,1991 and another on May 22, 1991. The continuance granted on May 23, 1991, in response to Vale’s written motion, was granted over the objection of the state. Subsequent to these written motions, there were numerous other oral motions for continuance made by counsel for both defendants prior to the commencement of the first trial on December 1, 1992.
From the minute entries, it appears that the last oral motion for a continuance was made by Vale’s attorney on October 29,1992. At that time the matter was reset for November 16, 1992.
During the course of voir dire in the first trial, Vale’s attorney moved for a mistrial, which was granted. The case thereafter proceeded to trial on January 11, 1993.
RNeidhardt argues that the oral motions cannot suspend the prescriptive period set forth in Art. 578 because LSA-C.Cr.P. *382 art. 707 mandates that motions for continuance be in writing.
When faced with the same argument in State v. Jones, this Court replied:
“We are mindful of the mandate that a motion for continuance be written to be effective. However, we agree with the state’s contention that the requirement of a written motion may be waived. See State v. Overton, 337 So.2d 1058 (La.1976). We find that the defendant, by repeatedly making oral motions for continuances either solely or jointly with the state, waived the code requirement of a written motion.”
Neidhardt further asserts that no pretrial motions were filed on her behalf nor were any motions for continuance filed on behalf of her prior to August 2,1992. The record does not support these assertions. Several oral motions for continuance are attributable to Neidhardt’s defense counsel.
Neidhardt claims that the minute entries which say that she moved to continue are inaccurate. After listening to the argument pertaining to this issue, the trial judge asked to see the transcripts from the minute entries which counsel alleged were inaccurate. The court then took a recess while the minute entries were being obtained. The transcripts from the court proceedings which were conducted after court resumed on November 30, 1992 are not contained in the appellate court record,[1] although it is clear that the court denied the motion to quash after considering the transcripts and arguments of counsel.
The state, in its brief, states that when the tapes were played, the | (¡voice of Neidhardt’s attorney was identified as he asked for a continuance. Appellants’ present lawyers did not represent them at trial.
In any event, there is nothing in this record suggesting that the district court judge was factually or legally mistaken when he found that written and/or oral motions by defendants for continuance between August 2, 1990 and August 2, 1992 suspended Art. 578(2) prescription. There is no reversible error in this assignment of error.
ASSIGNMENTS NO. 2 AND 3
Because these two assignments are related, they will be addressed together. The trial court allowed into evidence the six packets of heroin seized from Neidhardt’s residence after the arrest for the heroin found during the vehicle stop. Neidhardt argues that the separate possession by her at her home was inadmissible evidence of a crime other than the one for which she was arrested and subsequently charged by grand jury indictment. She also complains that because she was not given notice of this “other crimes” evidence by the state prior to trial, as is required by State v. Prieur, 277 So.2d 126 (La.1973), the admission of the six packets was reversible error. Vale joins in these contentions.
The state contends that the six foil packets of heroin found in Neidhardt’s residence were included within the scope of the indictment which charged her and Vale with possession with intent to distribute heroin on June 18, 1990. The trial judge agreed with the state and overruled defendants’ objection to the admissibility of the six foil packets of heroin.
LSA-C.E. art. 404(B)(1) reads as follows:
“Except as provided in Article 412, evidence of other |7crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident, or when it relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding.”
(Underlining provided.)
The seizure of the six packets of heroin occurred during the same basic time *383 frame as Neidhardt’s arrest for possession of heroin after the stop of her vehicle. Moreover, the state did not treat this as a separate and distinct offense, but rather considered it to be part of the indictment which charged defendants with possession with intent to distribute heroin on June 18, 1990.
Regarding defendants assertion that they were not given proper notice of the state’s intent to introduce evidence of other crimes, LSA-C.Cr,P. art. 720 specifically reads:
“Upon motion of defendant, the court shall order the district attorney to inform the defendant of the state’s intent to offer evidence of the commission of any other crime admissible under the authority of Louisiana Code of Evidence Article 404. Provided, however, that such order shall not require the district attorney to inform the defendant of the state’s intent to offer evidence of offenses which relates to conduct that constitutes an integral part of the act or transaction that is the subject of the present proceeding or other crimes for which the accused was previously convicted.”
See also State v. Leatherwood, 411 So.2d 29 (La.1982) and State v. Anderson, 517 So.2d 255 (LaApp. 1 Cir.1987).
We cannot say here that the trial judge erred (1) in finding that Prieur notices were not necessary and (2) in admitting into evidence the six packets of heroin found at Neidhardt’s residence.
JgASSIGNMENT NO. 4
By this assignment, appellants contend that the trial court erred in not allowing them to question Bergeron about his arrest for carrying a concealed weapon which occurred just prior to the first trial. Appellants claim that they were deprived of the opportunity to ask Bergeron about the circumstances of his release from confinement following the R.S. 14:95.1 arrest and the effect that that arrest may have had on his willingness to testify against Neidhardt and Vale.
LSA-C.E. art. 609.1, which provides the means for attacking credibility by evidence of conviction of crime in criminal cases, reads, in part, as follows:
“Convictions. Generally, only offenses for which the witness has been convicted are admissible upon the issue of his credibility, and no inquiry is permitted into matters for which there has only been an arrest, the issuance of an arrest warrant, an indictment, a prosecution, or an acquittal.”
When a defendant seeks to cross-examine a state witness about an arrest, or a pending, unrelated charge in an attempt to show bias or interest, the trial judge should make an inquiry outside the jury’s presence. If there is any evidence that any kind of deal had been struck, full cross-examination should be allowed. In State v. Smith, 591 So.2d 1219 (La.App. 4 Cir.1991), the court said this at page 1225:
‘We hold that admission of evidence of a prior arrest is limited to special circumstances. When the purpose is to show that the witness has bias or prejudice against a defendant or party to the litigation, the witness may be examined on the issue to establish the bias, prejudice, corruption or interest. This includes evidence of the existence of any agreement or deal with the state whereby the witness receives any benefit or gain in exchange for the testimony given.
“However, because of the potential prejudice to the witness and adverse parties, this issue should be raised in a motion in limine outside the presence of the jury. The trial court shall conduct a hearing outside of the jury’s presence to 1 adetermine the admissibility of the evidence.
“In the instant case, the trial court acted correctly. The state filed a motion in li-mine, and the defense was given an opportunity, outside of the presence of the jury, to discover if Thornton received any consideration from the state in exchange for his testimony. After the questioning, there was no evidence that a deal or agreement had been made. Therefore, the trial court did not err in granting the state’s motion ...”
*384 Here, regarding Bergeron, the trial judge, with the jury excused, made an inquiry. Bergeron had been arrested for carrying a knife and he had been formally charged. The prosecuting attorney said that there had been no deals regarding the weapons charge. The trial judge then ruled that Bergeron could be cross-examined about past convictions and whether he had made any further deals with the state after his agreement to testify against Neidhardt and Vale in return for a dismissal of the heroin charge against him.
The fact that Bergeron had a vital interest in the heroin case was known to the jury. During direct examination, Bergeron testified about the events related to his arrest with Neidhardt and Vale. He straightforwardly said that he had made a deal and the charge against him was dropped in exchange for his testimony favoring the prosecution.
During cross-examination, defense counsel asked Bergeron about his criminal record. Although the trial judge did not allow counsel to ask Bergeron about his arrests, he was allowed to ask him about any deals that had been made. Defense counsel asked Berger-on in detail about the particular deal he made in connection with the heroin charge. Ber-geron said that he was made aware of the fact that the police knew he had been making various other drug transactions and that he knew he could get life imprisonment if convicted. Defense counsel was also allowed to ask if Bergeron made any other deals with the state in relation to any other charges. Bergeron denied that any other deals had been made.
1 ipThe cases submitted by appellants, State v. Brady, 381 So.2d 819 (La.1980), and State v. Bailey, 367 So.2d 368 (La.1979), are factually distinguishable from Bergeron’s situation. Because the district court’s inquiry showed that Bergeron was not promised anything after the weapons charge and that there were no other special circumstances, the trial judge acted and ruled properly. No doubt, however, the jury knew of Bergeron’s deal and his reasons for testifying against Neidhardt and Vale.
ASSIGNMENT NO. 5
LSA-C.Cr.P. art. 882 authorizes the court that imposed an illegal sentence or an appellate court on review to correct an illegal sentence; accordingly, it is ordered that the prohibition against parole be removed from sentences imposed on Neidhardt and Vale for violation of R.S. 40:966(A).
OTHER ASSIGNMENTS
In one of her assignments of error, distinct from Vale’s, Neidhardt complains because she was prevented from asking about Ber-geron’s current whereabouts, i.e., his present residence. After Bergeron was sworn, the prosecutor asked that the witness not be required to give his address. The trial judge agreed. Neidhardt’s attorney objected, then suggested that the trial judge advise the jury that lay witnesses in his court were not obligated to give their addresses and that no inferences should be drawn from this. The trial judge complied, saying:
“Ladies and gentlemen, I want you to understand that lay witnesses in this case—in this court are not obligated to give their address, and I don’t want you to draw any inferences from the fact that I told this witness that he did not have to give his address.”
| nGenerally, a defendant may not be entitled to the addresses of state witnesses; however, where a determination has been made that there exists peculiar and distinctive reasons why fundamental fairness requires such discovery, there should be no prohibition of the right of discovery.
Neidhardt’s trial counsel was not able to state any particular or distinctive reason why Bergeron should give his address or why either defendant would be prejudiced by the failure to have this information before the jury. There was no denial of fundamental fairness. If there was any error here, it was harmless.
Vale assigned as error the trial judge’s allowing Bergeron, after a Prieur notice was given, to testify about a delivery of heroin about two weeks prior to June 18, 1990, allegedly to show knowledge, system and intent. Vale argues that the only reason *385 for this evidence was to depict him as a “bad person.”
Testimony at trial showed that the Jefferson Parish Sheriffs Office’s narcotics department had monitored Bergeron’s activities for several months trying to determine w;ho his connections were. It was ultimately determined that Bergeron was buying heroin from Neidhardt and Vale.
Bergeron’s testimony about the earlier sale was clearly admissible after a Prieur notice was given.
We note that Vale filed two appellate briefs, one on November 29, 1993 and another on July 5,1994. This opinion considers all of the assignments of error specified in the 1994 brief. The 1993 brief contains one specification of error not part of the later brief. In that assignment, Vale contends that the trial judge erred in denying a motion for severance. In support of this argument, Vale says that the evidence against Neid-hardt was much stronger than the evidence against him.
| i2The trial judge correctly denied the severance. The defenses of Neid-hardt and Vale were not discordant. Neither tried to place blame on the other; also, proof against both was about the same and was substantial.
Persons jointly indicted are not entitled to a severance as a matter of right. Only when a mover can show by convincing evidence that the defenses presented will be antagonistic will justice require a severance. See State v. Parker, 506 So.2d 675 (La.App. 5 Cir.1987), and LSA-C.Cr.P. art. 704. Vale’s evidence in support of a severance was inconsequential.
For these reasons, we remove the prohibition against parole and otherwise affirm.
AFFIRMED AS AMENDED.

. On March 1, 1994, this Court issued an order requesting the clerk of court to supplement the record with a portion of transcript from a November 30, 1992 post-recess hearing. In response to that order, the court reporter informed this Court that after the recess on November 30, 1992, there was a lengthy conference in the judge's chambers. The parties, however, never went back into the courtroom to put anything on the record.